UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:
DIS Transportation, LLC

Case No. 20-03408
Chapter 11
Hon. Scott W. Dales

_____ Debtor(s) /

## COVER SHEET FOR MOTION TO USE CASH COLLATERAL OR TO OBTAIN CREDIT

The debtor has filed a motion to use cash collateral or to obtain postpetition financing, which is attached to this Cover Sheet. In accordance with LBR 4001-2(b), the debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the motion of each of the following provisions:

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | ☐ Yes ☑ No | Page ____, ¶ ____ |
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | ☑ Yes ☐ No | Page 8, ¶ 40(a) |
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | ☐ Yes ☑ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (5) Provisions that prime any lien without that lienholder's consent. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (8) Provisions for the payment of prepetition debt. | ☑ Yes<br>☐ No | Page 8, ¶ 40(b) |
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | ☐ Yes<br>☑ No | Page ____, ¶ ____ |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | ☐ Yes<br>☑ No | Page ____, ¶ ____ |

| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | ☐ Yes<br>✔ No | Page ____, ¶ ____ |
|---|---|---|
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | ☐ Yes<br>✔ No | Page ____, ¶ ____ |
| (16) Provisions that purport to bind a subsequent trustee. | ☐ Yes<br>✔ No | Page ____, ¶ ____ |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | ☐ Yes<br>✔ No | Page ____, ¶ ____ |

Date: 11/10/20

/s/ Steven M. Bylenga

[Debtor's counsel]

## UNITED STATES BANKRUPTCY COURT

## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In Re: | Chapter 11 |
| | Case No: 20-03408 |
| DIS TRANSPORTATION. | Hon. Scott W. Dales |
| | Filed On: November 10, 2020 |
| Debtor. | |
| _____/ | |

### DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN INTERIM AND FINAL ORDER (A) AUTHORIZING IT TO USE CASH COLLATERAL; AND (B) PROVIDING ADEQUATE PROTECTION AND OTHER RELIEF

NOW COMES Debtor, DIS Transportation, by and through its attorneys, Chase Bylenga Hulst, PLLC, and files its *Emergency Motion for Entry of an Interim and Final Order (A) Authorizing It to use Cash Collateral; and (B) Providing Adequate Protection and Other Relief* (the "Motion"), and in support of its Motion states as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(M).

3. Venue of this proceeding and the Motion is in this District is proper under 11 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §105, 361 & 363.

### BACKGROUND

4. On November 10, 2020 ("Petition Date"), Debtor filed for protection under Chapter 11, Subchapter V, Small Business Debtor Reorganization, of the United States Bankruptcy Code ("Bankruptcy Code"). Debtor filed this Motion as soon as practical after the Petition Date.

5. Debtor continues to operate its business and manage its financial affairs as a debtor-in-possession pursuant to 11 U.S.C. §§1107(a) and 1108 of the Bankruptcy Code.

6. Debtor files this Motion pursuant to Fed. R. Bankr. P. 4001 and 4003.

## RELIEF REQUESTED

7. Debtor is in immediate need of an Order authorizing the use of cash collateral in order to sustain its operations and preserve its assets for the benefit of the estate and the creditors.

8. Through this Motion, Debtor seeks the entry of interim and final Orders (i) granting and affirming adequate protection to Debtor's creditors secured against cash collateral, (ii) authorizing Debtor's use of cash collateral; and (iii) scheduling a final hearing.

## DEBTOR'S CASH COLLATERAL AND SECURED CREDITORS

9. Debtor owns and operates a trucking company located at 3636 E. Paris Ave. SE, Grand Rapids, Michigan 49512. **Exhibit A**, Sworn Statement of Malden Tepic.

10. Debtor was incorporated in 2009. From 2009 through 2018 Debtor's business experienced steady growth. By 2018, Debtor's gross revenue was approximately $8.5 million per year.

11. In late 2018, the average freight rate that Debtor received per mile dropped substantially from approximately $2.00 per mile to approximately $1.00 per mile.

12. From late 2018 through early 2019, Debtor's gross income steadily dropped from the reduced freight rate, which resulted in Debtor being unable to sustain its overhead.

13. In 2019, the Debtor retained Harrington & Kieft, PLLC ("Harrington") to help turnaround its business, reduce its liabilities, and reduce its overhead.

14. Harrington was able to work with Debtor and Debtor's creditors to reduce its liabilities from approximately $1.7 million in early 2019 to approximately $550,000.00, as of the Petition Date.

15. Even though the Debtor's total liabilities were substantially reduced, the Debtor was still unable to afford its current monthly liabilities. Debtor's inability to pay its monthly liabilities were further exacerbated in the Spring of 2020 due to economic conditions related to COVID-19.

16. As of the Petition Date, several secured creditors were threatening to repossess collateral, which would result in Debtor's business becoming untenable.

17. Debtor believes that it can successfully reorganize by utilizing its Chapter 11 proceeding to reduce its liabilities and/or restructure its payment terms.

18. The Debtor has an immediate need for use of cash collateral to continue its operations, purchase material, pay its lease payments, meet its payroll and other necessary, ordinary business expenditures and preserve the value of its estate for the benefit of all creditors.

19. The Debtor anticipates it will operate at profit going forward. The Debtor has prepared an operating budget and cash flow projections ("Budget"), attached as Exhibit "B", which contains projected sales and an anticipated Budget of all necessary expenditures going forward that are necessary to be paid to avoid irreparable harm to the estate for the next thirty (30) days. Attached as Exhibit "C" is a 90-day projection.

20. The Debtor estimates that it will operate at either a profit or a break even for the next 90 days.

21. Included in the Budget are expenses for use of a factoring company to insure the efficient collection of the Debtor's invoices. The Debtor utilizes Compass Funding Solutions ("Compass"), which receives a commission of approximately 1.5%. Commensurate with the filing of this Motion, your Debtor has also filed a Motion pursuant to 11 U.S.C. §364 to provide for use of Compass as a factor ("Factoring Motion"). Your Debtor has filed the Factoring Motion out of

an abundance of caution. It believes that the use of Compass is in the ordinary course of business as it has utilized Compass for quite some time and these types of factoring arrangements are common and ordinary in its business.

22. Debtor further has necessary operating expenses related to logistics, transportation, and regulatory fees.

23. Allowing Debtor to use revenue generated from trucking to pay for ongoing operational expenses is in the best interest of the creditors because Debtor anticipates a net monthly profit, of approximately $6,250.00[1].

24. Mr. Tepic, Debtor's CEO, has the primary responsibility for its day-to-day financial operations. His certification in support of this Motion, is attached as **Exhibit A**. In addition, Debtor attached its 90-day budget, which demonstrates a reasonably likelihood that Debtor can operate at a profit for the next 90 days. **Exhibit C**.

25. The following is a summary of Debtor's assets based upon Mr. Tepic's knowledge as of October 25, 2020:

| | | |
|---|---|---|
| a. | Checking Accounts | $24,908.45 |
| b. | Cash | $50.00 |
| c. | Accounts Receivable (including credit card receipts) | $0.00 [2] |
| d. | Reserve Account with Factoring Company | $5,701.49 |
| e. | Inventory Supplies (at market price) | $N/A [3] |
| f. | **Total**: | $30,659.94 |

---

[1] Debtor anticipates monthly net income of approximately $8,940.00; however, Debtor has traditionally earned less income in December. The 90 day net average of $6,250.00 per month includes two months with estimated net income of $8,940.00 and one month (December) of estimated net income of $870.00.
[2] The Debtor utilizes a factoring company, Compass Funding Solutions, for its Accounts Receivable. Debtor last submitted invoices to Compass on 10/28/30.
[3] Debtor does not own inventory.

26.    The value of Debtor's cash collateral is approximately $30,659.94 which includes the Checking Account, Cash, Reserve Account, Accounts Receivable, and Inventory.

27.    Debtor believes the following lenders are likely to assert an interest in one or more of the aforementioned assets, including[4]:

    a. <u>First Community Bank</u>

        i. First Priority[5] – filed on 09/07/2017

        ii. Amount: $250,000.00

        iii. Lien on: The first $250,000.00 worth of unencumbered trucks and trailers.

    b. <u>Compass Funding Solutions, LLC</u>

        i. Second Priority – filed on 04/04/2019

        ii. Amount: $0[6]

        iii. Lien on: All assets of Debtor and "[i]n the event that any entity is granted a security interest in debtor's accounts, chattel paper or general intangibles contrary to [Debtor's agreement not to grant a security interest in the secured collateral] . . . any proceeds thereof . . . ."

    c. <u>Secured Lender Solutions, LLC (Blue Vine)</u>

        i. Third Priority – filed on 06/18/2019

        ii. Amount: $20,365.00

        iii. Lien on: All accounts, chattel paper, documents, instruments, general intangibles, payment intangibles, goods, inventory, investment property, rents, income, securities, fixtures and other property, now existing or hereafter arising, and any and all proceeds of the foregoing, including, without limitation, insurance proceeds. All machinery and equipment, whether now owned or hereafter acquired, together with all replacements, parts, repairs, additions, accessions and accessories incorporated therein or

---

[4] All amounts listed are estimates. Debtor has additional secured liabilities; however, none of those liabilities are secured against cash collateral. Each additional secured liability is secured to specific personal property, including trucks and trailers.

[5] TCI Business Capital, Inc. filed a UCC Security Statement on April 07, 2009. TCI's security statement from April 07, 2009 would be first priority; however, upon information and belief, the liability to TCI was fully satisfied pre-petition, but TCI failed to file an UCC Termination Statement.

[6] Compass Funding Solutions is Debtor's factoring company.

       affixed thereto and any and all proceeds of the foregoing, including, without limitation, insurance proceeds.

   d. <u>CHTD Company</u>

      i. Fourth Priority – filed on 06/26/2019

      ii. Lien on: All accounts, chattel paper, documents, instruments, general intangibles, payment intangibles, goods, inventory, investment property, rents, income, securities, fixtures and other property, now existing or hereafter arising, and any and all proceeds of the foregoing, including, without limitation, insurance proceeds. All machinery and equipment, whether now owned or hereafter acquired, together with all replacements, parts, repairs, additions, accessions and accessories incorporated therein or affixed thereto and any and all proceeds of the foregoing, including, without limitation, insurance proceeds.

   e. <u>First Corporate Solutions (Quality Leasing)</u>

      i. Fifth Priority – filed on 02/12/2020

      ii. Amount: $47,787.28

      iii. Lien on: "All present and future assets of the Debtor" and "[i]n the event that any entity is granted a security interest in debtor's accounts, chattel paper or general intangibles contrary to [Debtor's agreement not to grant a security interest in the secured collateral] . . . any proceeds thereof . . . ."

28.   Upon information and belief, there are no other secured creditors that could claim any interest in Debtor's Assets.

### **BASIS FOR RELIEF**

29.   11 U.S.C. § 363(c)(2) sets the terms for a Court's approval for use of cash collateral, providing that a debtor "may not use, sell, or lease cash collateral . . . unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

30. Under § 362(e), upon request of an entity that has an interest in property to be used by the debtor, "the Court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

31. Adequate protection serves to protect secured creditors from a diminution in the value of its collateral during the Chapter 11 proceeding. *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich 1988).

32. Debtor has the burden of establishing that a secured creditor is adequately protected. 11 U.S.C. § 363(p).

33. "A debtor, attempting to reorganize a business under chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." *In re George Ruggerie Chrysler-Plymouth, Inc*, 727 F.2d 1017, 1019 (11th Cir. 1984).

## DEBTOR'S USE OF CASH COLLATERAL

34. The use of cash collateral is necessary to preserve the value of the estate and benefit the creditors.

35. Debtor requires use of the cash collateral to pay its employees and ordinary expenses of operating the business such as insurance, rent, utilities, and inventory, as well as payment of post-petition professional expenses and fees as approved by this Court.

36. Debtor also requires use of the cash collateral to maintain and preserve assets, including repairs and maintenance of its vehicles.

37. Debtor's actions to substantially reduce its overhead and liabilities coupled with the recent increases in freight rates support Debtor's ability to generate revenue sufficient to satisfy ordinary operating expenses and fund a successful Chapter 11 Plan.

38. Accordingly, use of cash collateral is essential to avoid irreparable harm to the Debtor by preventing Debtor from generating revenue sufficient to continue operating its business and to preserve the value of the estate.

39. Pursuant to the adequate protection identified below, Debtor submits that it should be granted authority to use the cash collateral.

**OFFERS OF ADEQUATE PROTECTION OF SECURED CREDITORS**

40. As adequate protection for the use of the cash collateral described in Paragraphs 23 – 25, Debtor offers the following as adequate protection under 11 U.S.C. §§ 361 & 363 concerning any diminution in pre-petition collateral:

   a. Secured creditors shall be granted continuing and replacement security interest in liens on all of the Debtor's post-petition property, excluding the Debtor's rights under 11 U.S.C. §544 et seq. However, nothing in this paragraph shall be deemed to provide any creditor with an <u>improvement</u> of position from the values of said creditors respective collateral, as of the date of the Petition nor grant any interests in any property which said creditor does not have a properly perfected lien;

   b. The proceeds of any sale by Debtor of any property subject to liens held by Secured Creditors (other than sales in the ordinary course of business) shall, unless said creditor agrees in conjunction with the approval of a sale under 11 U.S.C. § 363 of the Code or the Court orders otherwise, be paid to said creditor for application to said creditor's indebtedness; and

   c. The Debtor shall supply financial information and information relating to the collateral as is reasonably requested by each Secured Creditor. In the event that the Debtor and the Secured Creditor cannot agree as to what report(s) shall be provided,

the Court shall, upon notice and a hearing, make a determination. The Debtor anticipates it will provide Secured Creditors with (i) profit & loss statements; (ii) payables agings; (iii) accounts receivable agings; (iv) copies of such reports and documents as are required to be filed with the Office of the United States Trustee; (v) proof of timely payment of taxes and insurance.

41. Debtor believes these procedures, will adequately protect the secured creditors.

42. Debtor's use of cash collateral pursuant to the order shall cease upon the occurrence of one of the following: (i) debtor fails to comply with its promises of adequate assurance in any fashion; (ii) the appointment of a Chapter 11 trustee; (iii) conversion of this Chapter 11 proceeding to a Chapter 7; (iv) this Chapter 11 proceeding is dismissed without the consent of the Secured Creditors; or (v) a material diminution in the amount of the Debtor's Cash Collateral Assets and, after notice and hearing, the Court determines that the Cash Collateral Assets are in excess of any adequate protection provided herein. Debtor reserves its right to contest a default in the event that a Secured creditor declares a default under this paragraph and, upon a determination by the Court that the adequate protection is intact, Debtor shall not be deemed in default hereunder.

## **NOTICE**

43. Notice of this Motion will be provided to (a) the United States Trustee for the Western District of Michigan; (b) all secured creditors identified by the Debtor which may have a claim in Cash Collateral; (c) the Debtor's twenty (20) largest unsecured creditors; (d) any other parties required to be served by Fed. R. Bankr. P. 4001; and (e) any party that has filed, prior to such date, a request for notices with this Court.

44. The Debtor further requests that the Court schedule a final hearing on this Motion and authorize it to serve copies of an interim order entered by the Court which fixes the time, date and manner for the filing of objections to (a) the United States Trustee for the Western District of Michigan; (b) all secured creditors identified by the Debtor; (c) the Debtor's top twenty (20) unsecured creditors; (d) any other parties required to be served by Fed. R. Bankr. P. 4001; and (e) any party that has filed, prior to such date, a request for notices with this Court. The Debtor requests that the Court consider such notice of the final hearing to be sufficient under Fed. R. Bankr. P. 4001

**WHEREFORE**, Debtor respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit D**, granting the relief requested herein and such other and further relief as it deems just and proper.

Respectfully submitted,

CHASE BYLENGA HULST, PLLC

Dated: November 10, 2020     By:     /s/Steven M. Bylenga
Steven M. Bylenga (P72492)
Michael P. Hanrahan (P77274)
Attorney for Debtor
25 Division Ave S., Suite 500
Grand Rapids, MI 49503
(616) 608-3061