# EXHIBIT A

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF MICHIGAN

In Re:

DIS Transportation, LLC.

Debtor,

_____/

Case No. 20-
Chapter 11
Hon.
Filed On:

## SWORN STATEMENT OF MLADEN TEPIC, PRESIDENT OF DEBTOR, IN SUPPORT OF ITS FIRST DAY MOTIONS

I, MLADEN TEPIC, being duly sworn, deposes that, to the best of my knowledge and belief:

### BACKGROUND

1. Debtor is a Grand Rapids trucking company that was incorporated in the State of Michigan in 2009.

2. Amra Tepic (Amra) is Debtor's Sole Member. As the sole member, Amra caused Debtor to issue corporate resolutions: (i) appointing me, Mladen Tepic, as Debtor's President, and (ii) authorizing the filing of Debtor's Chapter 11 Bankruptcy Petition.

3. As Debtor's President, my responsibilities include managing Debtor's Day-to-Day operations. I am familiar with the nature and extend of Debtor's assets, liabilities, and transactional history.

### EVENTS LEADING TO CHAPTER 11 FILING

4. From 2009 through 2018, Debtor's gross income consistently increased. By 2018, Debtor's gross annual income was approximately $8.5 million per year.

5. In 2014, Amra formed a related entity, DIS Express, and appointed me as President.

6. DIS Express utilized Debtor's vehicles, employees, and independent contractors to provide trucking services. Although Debtor and DIS Express are separate legal entities, they essentially operated as one entity with consolidated financial reports.

7. In late 2018, the per mile rate Debtor received for hauling freight dropped by almost 50%, from approximately $2.00 per mile to approximately $1.00 per mile.

8. The rate reduction of approximately 50% resulted in Debtor being unable to sustain its overhead.

9. In 2019, Debtor hired John Harrington of Harrington & Kieft, pllc to assist Debtor in reducing its overhead and liabilities.

10. From 2019 through the Petition Date, Debtor was able to reduce its total liabilities from approximately $1.7 million in early 2019 to approximately $550,000.00 on the Petition Date.

11. Although Debtor was able to substantially reduce its overhead, including by eliminating the salaries of Amra and Mladen Tepic, Debtor was unable to fulfil its monthly liability payments.

12. Debtor's financial condition was exacerbated by issues related to COVID-19.

13. Then, in the weeks leading up to the Petition Date, freight rates significantly increased for the first time since 2018. In fact, as of the Petition Date, freight rates were at or above the 2018 rates.

14. Unfortunately, by the time freight rates recovered, Debtor had defaulted on a number of its liabilities and creditors were threatening to repossess Debtor's vehicles.

15. Left with no other options, Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code to obtain protection from its creditors while it seeks to restructure its business through the reduction or elimination of certain liabilities.

## CASH COLLATERAL AND FINANCING

16. Debtor is in immediate need of cash collateral to preserve the value of its estate.

17. Specifically, Debtor needs use of the cash collateral to pay its employees and independent contractors, pay rent and utilities, repair and maintain its vehicles, and pay its ordinary operating costs.

18. As of the Petition Date, Debtor's vehicles and independent contractors are transporting freight throughout the United States.

19. Without access to cash collateral, Debtor will be unable to maintain, repair, or insure its vehicles.

20. Debtor believes that its Chapter 11 bankruptcy will allow it to restructure its business model and restore a profitable business.

21. In order to do so, it requires use of its cash collateral, and such use is necessary to preserve the value of the estate and avoid irreparable harm.

## EMPLOYEES

22. Debtor significantly reduced its overhead and liabilities prior to filing its Petition. The reduced operating costs combined with the recent significant increase to freight rates should allow Debtor to satisfy all ongoing operating costs and fund a successful reorganization.

23. If Debtor is not allowed to pay wages as agreed, Debtor will be unable to operate.

24. If Debtor is unable to operate, Debtor will not be able to maintain, repair, and insure its primary assets, the trucks it owns to haul freight.

25. Accordingly, it is critical that Debtor be permitted to continue to pay and honor all employee and independent contractor compensation so as to preserve the value of the estate.

## UTILITIES

26. Debtor's business headquarters at 3636 E. Paris Ave SE, Grand Rapids, Michigan 49512 contain its communications hub, which provides logistical support for its drivers.

27. Without utilities such as electricity, heat, water, and internet/telephone, Debtor cannot successfully operate its physical location.

28. Indeed, any interruption of utility service to Debtor's businesses would severely disrupt and diminish Debtor's chance for a successful reorganization by reducing or eliminating Debtor's ability to support and communicate with its employees and independent contractors.

29. Accordingly, Debtor requires an order prohibiting utility providers from altering, refusing, or discontinuing services to Debtor pending resolution of any disputed adequate assurance requests.

## CONCLUSION

30. The relief sought in the First Day Motions is necessary for Debtor to operate in its Chapter 11 bankruptcy; to avoid irreparable harm to its business and the bankruptcy estate; and is in the best interests of Debtor's creditors.

Dated: 11-10-2020     By: _/s/ Mladen Tepic_
                         Mladen Tepic, CEO of DIS Transportation, llc and
                         CEO of DIS Express, llc.