# EXHIBIT A



**115 55ᵗʰ St., Suite 301, Clarendon Hills, IL 60514  Tel: 844-899-8092 Fax: 888-908-8002 www.compassfs.net**

3/27/2019

**MLADEN TEPIC**
**DIS EXPRESS, INC**
**2237 TRADITION DR NE**
**GRAND RAPIDS, MI 49505**

## Re:  FINANCING PROPOSAL

Dear **MR. TEPIC**

Compass Funding Solutions LLC ("CFS") is pleased to express our interest in providing the financing program outlined below for **DIS EXPRESS, INC**

This proposal, including the Summary of Standard Terms is provided to you with the understanding that approval of the CFS credit committee is pending and that, ultimately, the final form of our agreement will be set forth conclusively in a legal contract signed by all parties entitled "Factoring and Security Agreement".  Accordingly, this proposal does NOT constitute a binding commitment on the part of CFS.

Proposed terms are as follows:

| | |
|---|---|
| **Client:** | **DIS EXPRESS, INC** |
| **Maximum Credit:** | $120,000.00 (One hundred and twenty thousand Dollars) |
| **Advance Rate:** | Ninety five percent (95.00%) of eligible accounts receivable. |
| **Recourse:** | Ninety (90) days recourse from purchase date |
| **Term:** | Initial term of twelve (12) months with twelve (12) months renewals. Sixty (60) days, but no more than seventy five (75) days, written notice required for termination |
| **Fees:** | Finance Fee One percent (1.0%) for ninety (90) days thereafter based on the face amount of each financed invoice remains outstanding. |
| **Monthly Minimum Fee:** | Two quarters of one percent (0.50%) of the proposed Maximum Credit per month, for each month of the term. |
| **Early Termination Fee:** | The greater of (i) the Minimum Monthly Fee or (ii) the average monthly Base Fees earned by Purchaser for the three months having the highest total, multiplied by the number of months (or portions thereof) between the Early Termination date and end of the current Term. |
| **Due Diligence Fee:** | $350.00 (non-refundable) payable upon acceptance of this proposal. |
| **Ach Funding Next Day:** | $13.50 |
| **Direct Wire:** | $18.00 |
| **Check Fee:** | $2.00 |
| **Fuel Transfer:** | $7.95 |
| **Invoice fee:** | $0.00 |

This proposal is delivered to you with the understanding that neither it nor its substance will be disclosed by you to any third party, except with respect to persons who have an ownership or senior management relationship with **DIS EXPRESS, INC.** If you would like to go forward with this process, on the basis outlined herein, kindly e-mail or fax a signed and initialed copy of this proposal to our attention at the address noted above along with a check for $350.00 to satisfy the initial processing fee. If we do not hear from you within five (5) days of the date of this proposal, we will assume that you have made other financing arrangements and we will consider the proposal withdrawn.

Initials MT

# COMPASS FUNDING SOLUTIONS

**115 55th St., Suite 301, Clarendon Hills, IL 60514  Tel: 844-899-8092 Fax: 888-908-8002 www.compassfs.net**

## SUMMARY OF STANDARD TERMS

**Security.**  CFS requires a perfected security interest in all assets and a first priority UCC-1 filing on accounts receivable and proceeds. Lien terminations and or subordinations will be required from all secured parties with liens filed against accounts receivable and proceeds.

**Guaranties.**  Personal guarantees / Validity Indemnifications will be required from all owners.

**Eligible Invoices.**  Eligible invoices are generally defined as follows. Exceptions to these guidelines may be negotiated
on a case-by-case basis:
- Less than 30 days from the invoice date.
- Due from a customer that, in CFS's judgment, is creditworthy, up to the credit limit established by CFS.
- Resulting from the shipment and delivery of a product or completion of a service and not subject to counter-claim or offset (pre-billings, billings for products or services in transit, progress billings, guaranteed sales, and "bill and hold" sales are ineligible).
- Due from a customer based in the U.S.A. Eligibility of Canadian customers will be considered on an individual basis.
- Due from the Federal Government and assigned under the Assignment of Claims Act.
- Invoices from a customer of which less than 25% are over 90 days old.
- All customers must be credit approved by CFS prior to consideration for eligibility. Bank & trade references may be required for those customers lacking satisfactory credit histories.

**Operational Mechanics.**  Originals or copies of invoices, together with all supporting documentation (i.e. customer signed
timecards, purchase orders, bills of lading, proof of delivery or product/service acceptance), are submitted to CFS as generated.   Each invoice will bear instructions to customers to make and mail payments to CFS, at a lock box controlled by CFS. CFS will notify customers of new remittance instructions.

Factoring advances are tracked against specific eligible invoices that have been identified for financing.  New invoices are typically verified prior to funding. Receipts to the lock box are accounted for daily. CFS collects its advances, deducts its financing fees and remits any funds remaining, together with payments received on non-financed invoices, on a monthly basis. Financed invoices which become ineligible, for any reason, are immediately "charged back" or repaid, together with the financing fees, out of available funds (including funds advanced against non-financed but eligible invoices).

After the initial funding, all invoice submissions are processed and funded within 24 hours of receipt (pending completion of all required debtor verification). CFS does offer same day processing of your invoices for an Expedite Fee of 1% of the invoice amount - cut off time is 1:00pm

Charges for the above will be deducted from each appropriate Schedule of Accounts.

**Service Bundles:** Should the financing services offered pursuant to this proposal be bundled with other services provided by CFS' Corporate Affiliates (i.e insurance, financing etc.), the approval of this proposal, and the termination of any of your factoring services may be dependent on your status with or the approval/termination of other services with CFS' Corporate Affiliates, and vice versa.


MLADEN TEPIC
PRESIDENT
**Dis Express, Inc**

Vlad Kostik
Senior Vice President
Compass Funding Solutions, LLC


Sworn and subscribed before me
this 29 day of March , 2019

Sworn and subscribed before me
this____ day of_____, 2019


NOTARY PUBLIC
Notary Public 3-29-19

NOTARY PUBLIC


SADO JELOVAC
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF KENT
My Commission Expires 1/29/2020



## FACTORING AND SECURITY AGREEMENT

THIS FACTORING AND SECURITY AGREEMENT (the "Agreement") is entered into this 27th day of March 2019 by and between DIS EXPRESS, INC ("Seller") and COMPASS FUNDING SOLUTIONS, LLC. ("Purchaser") (collectively, the "Parties").

1. **Definitions and Index to Definitions**. The following terms used herein shall have the following meaning. All capitalized terms not herein defined shall have the meaning set forth in the Uniform Commercial Code:

1.1 "**Account(s)**" – Seller's account receivables or invoices

1.2. "**Addendum**" – any amendment, restatement, supplement, modification, or addendum made to this Agreement and executed by the Parties.

1.3. "**Advance**" – any loan or advance of cash or funds made by Purchaser to Seller in accordance with this Agreement.

1.4 "**Advance Rate**" – Ninety five percent (95.00%).

1.5. "**Affiliate**" with respect to Seller, any Person who controls Seller, is controlled by Seller, or is under common control with such Person and Seller. For purposes of this definition, "control" means the possession, directly or indirectly through one or more intermediaries, or the power to direct the management and policies of a Person, whether through the ownership of Seller's assets, shares, stock, partnership interests, limited liability company interests, membership interests, other equity interests, by contract, family relationship, or otherwise.

1.6 "**Avoidance Claim**" - any claim that any payment received by Purchaser is avoidable under the US Bankruptcy Code or any other debtor relief statute.

1.7. "**Base Fees**" - Factoring Fee plus the Initial Fee.

1.8. "**Chosen State**: - Illinois.

1.9. "**Clearance Days**"- three (3) banking days.

1.10. "**Closed**" – Purchaser has received full payment on a Purchased or Reserve Account.

1.11. "**Collateral**"- all Seller's now owned and hereafter acquired Accounts, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, and General Intangibles.

1.12. "**Complete Termination**" – Complete Termination occurs upon satisfaction of the following conditions:

1.12.1. Payment in full of all Obligations of Seller to Purchaser;

1.12.2. If Purchaser has issued or caused to be issued guarantees, promises, or letters of credit on behalf of Seller, acknowledgement from any beneficiaries thereof that Purchaser or any other issuer has no outstanding direct or contingent liability therein.

1.12.3. Seller has executed and delivered to Purchaser a general release in the form of Exhibit 1.12.3. attached hereto.

1.13. "**Corporate Affiliate**" – Any entity that is a member of the family of companies related to Purchaser, with whom Seller has a written agreement.

1.14. "**Curative Payment**" - a payment made by Purchaser to an affiliate of Purchaser for any outstanding amount(s) that is/are past due or owing by the Seller to such affiliate pursuant to the terms of a Related Agreement.

1.15. "**Early Termination Date**" – see Section 20.1. hereof.

1.16. "**Early Termination Fee**" – a charge equivalent to the greater of (i) the Minimum Monthly Fee or (ii) the average monthly Base Fees earned by Purchaser for the three months having the highest total Base Fees, multiplied by the number of months (or portions thereof) between the Early Termination Date and end of the current Term.

1.17. "**Eligible Account**" - an Account that is acceptable for purchase as solely determined by Purchaser in the exercise of its reasonable business judgment.

1.18. "**Events of Default**" - see Section 17.1.

1.19. "**Expedited Payment Fee**" – a charge equivalent to one percent (1%) of the Purchase Price.

1.20. "**Exposed Payments**" – payments received by Purchaser from or for the account of Payor that has become subject to a bankruptcy proceeding, to the extent such payments cleared the Payor's deposit account within ninety days of the commencement of said bankruptcy case.

1.21. "**Extension Date**" - with respect to each Advance, that date that is thirty (30) days after the Maturity Date.

1.22. "**Face Amount**" - the amount due on an Account at the time of its purchase.

1.23. "**Factoring Fee**" - the Factoring Fee Percentage multiplied by the Face Amount of a Purchased Account, for each Factoring Fee Period or portion thereof, that any portion thereof remains unpaid, computed from the end of the Initial Fee Period to and including the date on which a Purchased Account is Closed.

1.24. "**Factoring Fee Percentage**" – One percent (1.00%).

1.25. "**Factoring Fee Period**" – Ninety (90) days

1.26. "**Fuel Advance**" - any loan or advance of cash or funds requested by Seller and made by Purchaser to Seller, in accordance with this Agreement, which loan or advance is used by Seller to obtain fuel or otherwise satisfy its contractual fuel requirements.

1.27. "**Initial Fee**" – an origination fee for each Purchased Account that is calculated in accordance with Section 6.2.

1

Seller's Initials ⎍⎍⎍

1.28. **"Initial Fee Percentage"** - zero percent (0%) of the Purchased Account; provided that, throughout the Term of this Agreement, including any successive Term as provided under this Agreement, the Parties hereby agree that the Purchaser will review the US Prime Rate in effect as of the first business day of each calendar month and, in the event that the then current US Prime Rate changes from the previous calendar month, the Parties hereby agree to commensurate an increase or decrease, as applicable, to the Initial Fee Percentage.

1.29. **"Initial Fee Period"** - Zero (0) days from the date on which the Purchase Price is paid to Seller or credited by Purchaser to Seller's Reserve Account.

1.30. Intentionally Left Blank.

1.31. Intentionally Left Blank.

1.32. **"Invoice"** - the document that evidences or is intended to evidence an Account. Where the context so requires, reference to an Invoice shall be deemed to refer to the Account to which it relates.

1.33. **"Invoice Fee"** – a charge of $0.00 for each Purchase Account

1.34. **"Late Charge(s)"** – a daily accruing fee representing three tenths of one percent (0.30%) of the Purchased Accounts for any untimely payment not paid but due to Purchaser.

1.35. **"Late Payment Date"** - Ninety (90) days from the date on which a Purchased Account was Purchased.

1.36. **"Maturity Date"** - with respect to each Advance, that date that is ninety (90) days after the date such Advance is made by the Purchaser.

1.37. **"Maximum Amount"** - $120,000

1.38. **"Minimum Monthly Fee"** – a charge of $600 or two quarters of one percent (.50%) of the proposed Maximum Credit per month, for each month of the Term

1.39. **"Misdirected Payment Fee"** – a charge equivalent to fifteen (15%) of the amount of any payment (but in no event less than $1,000) on account of a Purchased Account received by Seller and not delivered in kind to Purchaser by the next business day following the date of receipt by Seller, or thirty percent (30%) of the amount of any such payment received by Seller as a result of any action taken by Seller to cause such payment to be made directly to Seller.

1.40. **"Missing Notation Fee"** – a charge equivalent to fifteen percent (15%) of the Face Amount.

1.41. **"Obligations"** – all present and future obligations owed by Seller to Purchaser whether arising hereunder or otherwise and whether arising before, during or after the commencement of any Bankruptcy matter in which Seller is a Debtor.

1.42. **"Payor"** – an Account Debtor, or other obligor who makes payment on Seller' Accounts.

1.43. **"Person"** – any natural person, sole proprietorship, corporation, limited liability company, partnership (general or limited), joint venture, trust of any kind, government agencies and political subdivisions thereof, or any other organization, irrespective of whether they are legal entities.

1.44. **"Purchase Date"** - the date Purchaser advises Seller in writing that Purchaser has agreed to purchase Account(s).

1.45. **"Purchase Price"** - the Face Amount of a Purchased Account.

1.46. **"Purchased Accounts"** - Accounts purchased hereunder which have not been Closed.

1.47. **"Related Agreement(s)"** – any other written agreement, document or instrument between the Parties in which Seller has or owes an obligation to Purchaser, or Purchaser's affiliates.

1.48. **"Remaining Balance"** - the unpaid portion of an Advance, including all fees, and accrued interest thereon, existing as of the Maturity Date of such Advance.

1.49. **"Repurchased"** – Account(s) that Seller buys back from Purchaser by paying Purchaser any unpaid Face Amount.

1.50. **"Required Reserve Amount"** - the Reserve Percentage multiplied by the unpaid balance of Purchased Accounts.

1.51. **"Reserve Account"** – an accounting maintained by Purchaser representing any unpaid portion of the Purchase Price due to Seller but retained by Purchaser to secure Seller's performance of this Agreement and any Related Agreement.

1.52. **"Reserve Percentage"** - five percent (5%) of the total outstanding Purchased Accounts.

1.53. **"Reserve Shortfall"** - the amount by which the Reserve Account is less than the Required Reserve Amount.

1.54. **"Schedule of Accounts"** - Seller's list of Accounts offered for purchase to Purchaser under the terms of this Agreement.

1.55. **"Term"** – 12 months from the date set forth above, or any extension thereof as set forth in the most recent Addendum.

1.56. **"UCC"** – The Uniform Commercial Code as adopted in the Chosen State.

1.57. **"US Prime Rate"** – as of any date of determination, the national prime rate of interest as published by the Wall Street Journal.

INTENTIONALLY LEFT BLANK

2. **Assignment & Sale; Billing, Advances, Fuel Advances.**

2.1. **Assignment& Sale.**

2.1.1. Seller shall offer to exclusively sell to Purchaser as absolute owner, with full recourse, such of Seller's Accounts as are listed from time to time on Schedules of Accounts.

2

Seller's Initials _MT_

2.1.2. Purchaser shall be automatically relieved of such non-payment risk as to all then unpaid Accounts in the event that Seller incurs any Misdirected Payment Fee or Missing Notation Fee.

2.1.3. Each Schedule of Accounts shall be accompanied by documentation supporting and evidencing the authenticity of the Account, as Purchaser shall from time to time request.

2.1.4. Purchaser may, but need not purchase from Seller such Accounts as Purchaser determines to be Eligible Accounts.

2.1.5. Purchaser may not purchase any Account which will cause the unpaid balance of Purchased Accounts to exceed the Maximum Amount, unless otherwise agreed in writing.

2.1.6. Purchaser shall pay the Purchase Price of any Purchased Account, less any amounts due to Purchaser from Seller, including, without limitation, any amounts due under Section 6.1. hereof, to Seller within two (2) business days of the Purchase Date, whereupon the Accounts shall be deemed purchased hereunder.

2.2.  **Billing**.  Purchaser may send a monthly statement to all Payors itemizing their account activity during the preceding billing period. All Payors shall be instructed to make payments to Purchaser.

2.3  **Advances**.  Subject to this Agreement, and upon Seller's request, Purchaser shall have the right, in its sole and absolute discretion, to make Advances to the Seller at any time during the Term.  Any Advance made by Purchaser to Seller shall be in an amount mutually agreed upon by the Parties.

2.3.1 Each Advance made by Purchaser under this Agreement shall be due and payable in full on or before the Maturity Date of such Advance.

2.3.2   Each Advance shall accrue interest at the interest rate per week as determined by Purchaser in its sole discretion beginning on the date such Advance is made by Purchaser until the earlier of (i) the date the Advance is paid in full, and (ii) the Maturity Date.

2.3.3  If the outstanding amount of the Advance, including all accrued and unpaid interest thereon, is not paid in full on or before the Maturity Date, then the Remaining Balance of such Advance shall be due and payable in full on or before the Extension Date.

2.3.4  The Remaining Balance of an Advance not paid in full on or before the Maturity Date shall accrue interest at the interest rate per week as determined by the Purchaser in its sole discretion from the date of the Maturity Date until the Remaining Balance of such Advance is paid in full.

2.3.5  Each Advance made by Purchaser under this Agreement shall constitute part of the Obligations and shall be secured in full by the Collateral.

2.4  **Fuel Advances.**  Subject to this Agreement, and upon Seller's request, Purchaser shall have the right, in its sole and absolute discretion, to make Fuel Advances to Seller at any time during the Term.  Any Fuel Advance made by Purchaser to Seller (i) shall be in an amount as mutually agreed upon between the Parties, and (ii) shall be made directly to Seller or any fuel account maintained by Seller.

2.4.1 Each Fuel Advance made by Purchaser under this Agreement shall be due and payable to Purchaser in cash on or before the seventh (7th) day after such Fuel Advance is made to Seller.

2.4.2 Each Fuel Advance shall accrue interest weekly at the Advance Rate  as determined by  Purchaser  on the date such Fuel Advance is made by  Purchaser until the date such Fuel Advance is paid in full.

2.4.3 Each Fuel Advance made by Purchaser under this Agreement shall constitute part of the Obligations and shall be secured in full by the Collateral.

## 3.  Reserve Account.

3.1.  Seller shall pay to Purchaser on demand the amount of any Reserve Shortfall.

3.2.  Purchaser shall pay to Seller any amount by which the Reserve Account exceeds the Required Reserve Amount on the 15th and the last business day of each month.

3.3.  Purchaser may charge the Reserve Account with any Obligation.

3.4.  Purchaser may pay any amounts due Seller hereunder by a credit to the Reserve Account.

3.5.  Purchaser may retain the Reserve Account until Complete Termination.

## 4.  Exposed Payments.

4.1.  Upon termination of this Agreement Seller shall pay to Purchaser (or Purchaser may retain), to hold in a non-segregated non- interest bearing account the amount of all Exposed Payments (the "Preference Reserve").

4.2.  Purchaser may charge the Preference Reserve with the amount of any Exposed Payments that Purchaser pays to the bankruptcy estate of the Payor that made the Exposed Payment, on account of a claim asserted under Section 547 of the US Bankruptcy Code.

4.3.  Purchaser shall refund to Seller from time to time that balance of the Preference Reserve for which a claim under Section 547 of the US Bankruptcy Code can no longer be asserted due to the passage of the statute of limitations, settlement with the bankruptcy estate of the Payor or otherwise.

3

Seller's Initials

5. **Authorization for Purchases**.

5.1.  Subject to this Agreement, Seller authorizes Purchaser to purchase Accounts upon telephonic, facsimile or other instructions received from anyone purporting to be an officer, employee or representative of Seller.

5.2.  If Seller breaches or is in default of any Related Agreement, or otherwise has any monetary obligation owed to an affiliate of Purchaser that is past due, Purchaser may (i) cease its purchase of any Accounts under this Agreement until such time as Seller has remedied or cured such breach or default, or otherwise paid such outstanding or overdue obligations in full, and (ii) make a Curative Payment to such affiliate of Purchaser in an amount up to the overdue or past due amount owed by Seller to Purchaser's affiliate.

5.3.  To the extent Purchaser makes a Curative Payment to Purchaser's affiliate under the terms of this Agreement, Purchaser may make such Curative Payment from the funds in the Reserve Account or funds from a Purchased Account.

6. **Seller's Fees and Expenses**.

6.1.  Expedited Payment Fee(s) - Shall become due and payable in accordance with Section 2.1.6.

6.2.  Initial Fee - Shall become due and payable on the Purchase Date, computed as the product of the Initial Fee Percent and the Face Amount of a Purchased Account.

6.3.  Invoice Fee - Shall become due and payable on the Purchase Date for each Purchased Account.

6.4.  Factoring Fee - Shall become due and payable on the date a Purchased Account is Closed.

6.5.  Minimum Monthly Fee - Shall become due and payable when any amount by which the Base Fees earned in any month (prorated for partial months) is less than the Minimum Monthly Fee. This fee shall be paid on the first day of the following month.

6.6.  Misdirected Payment Fee - Shall become due and payable immediately upon its accrual.

6.7.  Missing Notation Fee - Shall become due and payable immediately upon its accrual.

6.8.  Early Termination Fee - Shall become due and payable on the Early Termination Date if Seller terminates this Agreement before the Term ends.

6.9.  Late Charge(s) - Shall become due and payable on demand on all past due amounts due from Seller to Purchaser.

6.10.  Out-of-pocket Expenses - Shall become due and payable on demand for expenses incurred by Purchaser in the administration of this Agreement. Such expenses include but are not limited to wire transfer fees, postage and audit fees.  Seller shall not be required to pay for more than four audits per twelve-month period.

7. **Repurchase of Accounts**. Purchaser may require that Seller repurchase, by payment of the then unpaid Face Amount thereof, together with any unpaid fees relating to the Purchased Account(s) on demand, or, at Purchaser's option, by Purchaser's charge to the Reserve Account:

7.1.  Any Purchased Account, whose payment has been disputed by Payor or Account Debtor obligated thereon, Purchaser being under no obligation to determine the bona fides of such dispute;

7.2.  Any Purchased Account where Seller has breached any warranty as set forth in the Section 14.4.

7.3.  Any Purchased Account due and owing which (i) in Purchaser's reasonable credit judgment Payor has become insolvent or (ii) has indicated an inability or unwillingness to pay the Purchased Account when due;

7.4.  All Purchased Accounts in the Events of Default, or upon the termination date of this Agreement; and

7.5.  Any Purchased Account that remains unpaid beyond the Late Payment Date.

8. **Security Interest**.

8.1.  As collateral securing the Obligations, Seller grants to Purchaser a continuing first priority security interest in the Collateral.

8.2.  With respect to the sale and purchase of the Accounts as between the Parties, such relationship shall be that of Purchaser and Seller. With respect to the making of Advances and Fuel Advances by Purchaser to Seller, the relationship of the Parties shall be that of lender and borrower.

9. **Clearance Days**.  For the purposes of this Agreement, Clearance Days will be added to the date on which Purchaser receives any payment.

10. **Authorization to Purchaser**.

10.1.  Seller irrevocably authorizes Purchaser, at Seller's expense, to exercise, at any time, any of the following powers until all of the Obligations have been paid in full:

10.1.1.  Receive, take, endorse, assign, deliver, accept and deposit, in the name of Purchaser or Seller, any and all proceeds of any Collateral securing the Obligations or the proceeds thereof;

10.1.2.  Take or bring, in the name of Purchaser or Seller, all steps, actions, suits or proceedings deemed by Purchaser necessary or desirable to effect collection of or other realization upon Purchaser's Accounts;

4

Seller's Initials _____

10.1.3. With respect to any of the following established or issued for the benefit of Seller, either individually or as a member of a class or group, file any claim under (i) any bond or (ii) under any trust fund.

10.1.4. Pay any sums necessary to discharge any lien or encumbrance which is senior to Purchaser's security interest in any assets of Seller, which sums shall be included as Obligations hereunder, and in connection with which sums the Late Charge shall accrue and shall be due and payable;

10.1.5. File in the name of Seller or Purchaser or both: (i) Mechanics lien or related notices, or (ii) Claims under any payment bond, in connection with goods or services sold by Seller in connection with the improvement of realty;

10.1.6. Notify any Payor obligated with respect to any Purchased Account, that the underlying Purchased Account has been assigned to Purchaser by Seller and that payment thereof is to be made to the order of and directly and solely to Purchaser;

10.1.7. Communicate directly with Seller's Payors to verify the amount and validity of any Purchased Account created by Seller.

10.1.8. After Events of Default:

(a) Change the address for delivery of mail to Seller and to receive and open mail addressed to Seller;

(b) Extend the time of payment of, compromise or settle for cash, credit, return of merchandise, and upon any terms or conditions, any and all Purchased Accounts and discharge or release any Payor or other obligor (including filing of any public record releasing any lien granted to Seller by such Payor), without affecting any of the Obligations;

10.1.9. File any initial financing statements and amendments thereto that:

(a) Indicate the collateral as all assets of Seller or words of similar effect, regardless of whether any particular asset comprised in the collateral falls within the scope of Article 9 of the UCC, or as being of an equal or lesser scope or with greater detail; (b) Contain any other information required by part 5 of Article 9 of the UCC for the sufficiency or filing office

acceptance of any financing statement or amendment, including (i) whether Seller is an organization, the type of organization, and any organization identification number issued to Seller and, (ii) in the case of a financing statement filed as a fixture filing or indicating collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the collateral relates; and

(c) Contain a notification that Seller has granted a negative pledge to the Purchaser, and that any subsequent lienor may be tortuously interfering with Purchaser's rights;

10.1.10. Advises third parties that any notification of Seller's Payors will interfere with Purchaser's collection rights.

10.1.11. File any Correction Statement in the name of Seller under Section 9-518 of the UCC that Purchaser reasonably deems necessary to preserve its rights hereunder.

10.2. Seller authorizes Purchaser to accept, endorse and deposit on behalf of Seller any checks tendered by Payor or Account Debtor "in full payment" of its obligation to Seller. Seller shall not assert against Purchaser any claim arising therefrom, irrespective of whether such action by Purchaser effects an accord and satisfaction of Seller's claims, under §3-311 of the UCC, or otherwise.

10.1.12. Upon written demand from Corporate Affiliate, pay to any Corporate Affiliate any sum that is past due more than 7 days.

**11. Automated Clearing House (ACH) Authorization.** In order to satisfy any of the Obligations, Seller authorizes Purchaser to initiate electronic debit or credit entries through the ACH system to any deposit account maintained by Seller.

**12. Covenants by Seller.**

12.1. After written notice by Purchaser to Seller, and automatically, without notice, after Events of Default, Seller shall not, without the prior written consent of Purchaser in each instance, (a) grant any extension of time for payment of any of its Accounts, (b) compromise or settle any of its Accounts for less than the full amount thereof, (c) release in whole or in part any Payor, or (d) grant any credits, discounts, allowances, deductions, return authorizations or the like with respect to any of the Accounts.

12.2. From time to time as requested by Purchaser, at the sole expense of Seller, Purchaser or its designee shall have access, during reasonable business hours if prior to Events of Default and at any time if on or after Events of Default, to all premises where Collateral is located for the purposes of inspecting (and removing, if after the occurrence of an Events of Default) any of the Collateral, including Seller's books and records, and Seller shall permit Purchaser or its designee to make copies of such books and records or extracts therefrom as Purchaser may request. Without expense to Purchaser, Purchaser may use any of Seller's personnel, equipment, including computer equipment, programs, printed output and computer readable media, supplies and premises for the collection of accounts and realization on other Collateral as Purchaser, in its sole discretion, deems appropriate. Seller hereby irrevocably authorizes all accountants and third parties to disclose and deliver to Purchaser at Seller's expense all financial information, books and records, work papers, management reports and other information in their possession relating to Seller.

12.3. Before sending any Invoice to Payor, Seller shall mark same with a notice of assignment as may be required by Purchaser.

12.4. Seller shall pay when due all payroll and other state and federal taxes, and shall provide proof thereof to Purchaser in such form as Purchaser shall reasonably require.

12.5. Seller shall not create, incur, assume or permit to exist any lien upon or with respect to the Collateral.

5

Seller's Initials _____

12.6.  Notwithstanding Seller's obligation to pay the Misdirected Payment Fee, Seller shall pay to Purchaser on the next banking day following the date of receipt by Seller the amount of any payment on account of a Purchased Account.

12.7  Seller shall not sell or otherwise transfer the Collateral or other assets to any Affiliate or third party without written notice to Purchaser. Said notice shall be provided to Purchaser within ten (10) days of said transaction.

12.8.  Avoidance Claims.

12.8.1. Seller shall indemnify Purchaser from any loss arising out of the assertion of any Avoidance Claim and shall pay to Purchaser on demand the amount thereof.

12.8.2. Seller shall notify Purchaser within two (2) business days of it becoming aware of the assertion of an Avoidance Claim.

12.8.3. This provision shall survive termination of this Agreement.

12.9.  Third Party Brokers.

12.9.1 Should Seller desire to broker with third party brokers who are unapproved by Purchaser, Seller shall be solely responsible for the payment of those Invoices (and all associated charges, fees, and interest) not paid when due and owing to Purchaser.

13.  **Account Disputes**.  Seller shall notify Purchaser promptly of and, if requested by Purchaser, will settle all disputes concerning any Purchased Account, at Seller's sole cost and expense.  Purchaser may, but is not required to, attempt to settle, compromise, or litigate (collectively, "Resolve") the dispute upon such terms, as Purchaser in its sole discretion deem advisable, for Seller's account and risk and at Seller's sole expense.  Upon the occurrence of Events of Default, Purchaser may Resolve such issues with respect to any Purchased Account.

14.  **Representation and Warranties**. Seller represents and warrants that:

14.1.  Seller is fully authorized to enter into and perform this Agreement;

14.2.  this Agreement constitutes a legal, valid and binding obligation;

14.3.  Seller is solvent and in good standing in the jurisdiction of its organization;

14.4.  The Purchased Accounts are and will remain:

14.4.1. Bona fide existing obligations created by the sale and delivery of goods or the rendition of services in the ordinary course of Seller's business;

14.4.2. Unconditionally owed and will be paid to Purchaser without defenses, disputes, offsets, counterclaims, or rights of return or cancellation other than Accounts owed by a Payor which was Insolvent;

14.4.3. Not sales to any entity that is affiliated with Seller or in any way not an "arms-length" transaction; and

14.5.  Seller has not received notice or otherwise learned of actual or imminent bankruptcy, insolvency, or material impairment of the financial condition of any applicable Payor regarding Purchased Accounts.

15.  **Indemnification**.  Seller agrees to indemnify Purchaser against and save Purchaser harmless from any and all manner of suits, claims, liabilities, demands and expenses (including reasonable attorneys' fees and collection costs) resulting from or arising out of this Agreement, whether directly or indirectly, including the transactions or relationships contemplated hereby (including the enforcement of this Agreement), and any failure by Seller to perform or observe its obligations under this Agreement.

16.  **Disclaimer of Liability**.  In no event will the Parties be liable to the other for any lost profits, lost savings or other consequential, incidental or special damages resulting from or arising out of or in connection with this Agreement, the transactions or relationships contemplated hereby or Purchaser's performance or failure to perform hereunder, even if Purchaser has been advised of the possibility of such damages.

17.  **Default**.

17.1.  Events of Default. The following events will constitute Events of Default hereunder: (a) Seller defaults in the payment of any Obligations or in the performance of any provision hereof or of any other Related Agreement now or hereafter entered into with Purchaser or Purchaser's affiliate, or any warranty or representation contained herein proves to be false in any way, howsoever minor, (b) Seller or any guarantor of the Obligations becomes subject to any debtor-relief proceedings, (c) any such guarantor fails to perform or observe any of such guarantor's obligations to Purchaser or shall notify Purchaser of its intention to rescind, modify, terminate or revoke any guaranty of the Obligations, or any such guaranty shall cease to be in full force and effect for any reason whatever, (d) Purchaser for any reason, in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Ob ligations.

17.2.  Waiver of Notice. PURCHASER'S FAILURE TO CHARGE ANY FEES OR ACCRUED INTEREST UPON ANY "DEFAULT" OR "PAST DUE" RATE SHALL NOT BE DEEMED A WAIVER BY PURCHASER OF ITS CLAIM THERETO.

6

Seller's Initials

17.3. Effect of Default.

17.3.1. Upon the occurrence of any Event of Default, in addition to any rights Purchaser has under this Agreement or applicable law, Purchaser may immediately terminate this Agreement, at which time all Obligations shall immediately become du e and payable without notice.

17.3.2. Late Charge(s) shall accrue and is payable on demand on any Obligation not paid when due.

18. **Account Stated**. Purchaser may from time to time, and its sole discretion render to Seller a statement setting forth the transactions arising hereunder. Each statement shall be considered correct and binding upon Seller as an account stated, except to the extent that Purchaser receives, within sixty (60) days after the mailing of such statement, written notice from Seller of any specific exceptions by Seller to that statement, and then it shall be binding against Seller as to any items to which it has not objected.

19. **Amendment and Waiver**. Only a writing signed by all Parties hereto may amend this Agreement. No failure or delay in exercising any right hereunder shall impair any such right that Purchaser may have, nor shall any waiver by Purchaser hereunder be deemed a waiver of any default or breach subsequently occurring. Purchaser's rights and remedies herein are cumulative and not exclusive of each other or of any rights or remedies that Purchaser would otherwise have.

20. **Termination, Effective Date, Automatic Renewal**.

20.1 Subject to the terms and conditions in this Section, this Agreement will be effective on the date it is signed by the Parties, shall continue for the Term, and shall be automatically extended (i) for successive Terms (each such successive Term shall be for the same period as the original Term), unless Seller shall provide written notice at least sixty (60) days but no more than seventy-five (75) days prior to the end of the Term (or applicable successive Term) of its intention to terminate whereupon this Agreement shall terminate on the last day of the Term (or applicable successive Term) or such later date as set forth in said notice (an "Early Termination Date"), and (ii) for one (1) successive Term (for the same period as the original Term) from the date that a Fuel Advance is provided by Purchaser to the Seller. For purposes of clarification, the provisions for the automatic extension of the Term set forth in clause (i) of this Section shall apply to any Term that is automatically renewed/extended under the terms and provisions of clause (ii) of this Section.

20.2 Subject to the terms and conditions of this Section 20, Seller may only terminate this Agreement as of the end of the next maturing Term, in accordance with the terms and prior written notice requirements set forth in Section 20.1 above.

20.3 Purchaser may terminate this Agreement by giving Seller thirty (30) days prior written notice of termination, whereupon this Agreement shall terminate on the earlier date of the date of termination or the end of the then current Term.

20.4 Seller may terminate this Agreement only if: (i) there are no breaches or defaults by Seller under any Related Agreement, (ii) there are no monetary obligations owed by Seller to any affiliate of Purchaser that are past due, and (iii) Seller pays all outstanding Obligations owed by the Seller to Purchaser under this Agreement as of the date of termination, or within three (3) days of the date of termination.

20.5 If Seller terminates this Agreement in accordance with the terms and conditions set forth herein, this Agreement shall automatically continue and extend for a successive Term if any of the following occurs: (i) a breach or default by Seller exists under any Related Agreement as of the date of termination, (ii) any monetary obligation owed by Seller to an affiliate of Purchaser under a Related Agreement is past due and still owed as of the date of termination, (iii) Seller fails to pay all outstanding Obligations owed by the Seller to Purchaser under this Agreement within three (3) days after the date of termination; or (iv) Seller has not requested a termination of assignment within three (3) days of the date of termination.

20.6 Notwithstanding anything set forth in this Agreement, Seller understands, consents and agrees that this Agreement, and any other agreement for services (i.e. insurance, equipment financing, etc) offered by Purchaser's Corporate Affiliate(s) that exists, or has been bundled, is related to or dependent upon the existence and operation of this Agreement, or any other agreement with a Corporate Affiliate, shall not be terminated unless and until any and all Obligations owed to Purchaser hereunder, and any and all obligations owed to  Purchaser's Corporate Affiliate(s) are satisfied in full prior to, or as of the termination of this Agreement as set forth herein.

21. **No Lien Termination without Release**. In recognition of the Purchaser's right to have its attorneys' fees and other expenses incurred in connection with this Agreement secured by the Collateral, notwithstanding payment in full of all Obligations by Seller, Purchaser shall not be required to record any terminations or satisfactions of any of Purchaser's liens on the Collateral unless and until Complete Termination has occurred. Seller understands that this provision constitutes a waiver of its rights under §9 -513 of the UCC.

22. **Successor Entity**. In the event Seller's principal(s), officer(s), director(s), or guarantor (s) during the Term of this Agreement or while Seller remains liable to Purchaser for any Obligations under this Agreement, directly or in conjunction with any other person, forms or causes to be formed a new entity or otherwise becomes associated with any newly formed or existing entity, whether corporate, partnership, limited liability company or otherwise that is in the same or substantially the same industry as

7

Seller's Initials

Seller, such entity shall be deemed to have expressly assumed the Obligations Seller owes Purchaser under this Agreement unless Purchaser is first notified of such association and expressly consents, in writing, to a waiver of Purchaser's rights under this section. With respect to each such entity, Purchaser shall be deemed to have been granted an irrevocable power of attorney with authority to file, naming such newly formed or existing entity, a new UCC-1 financing statement naming such entity as Seller, and to have it filed with any and all appropriate secretaries of state or other UCC filling offices. Purchaser shall be held harmless by Seller and its principals, officers, directors, and employees, and shall be relieved of any liability as a result of Purchaser's filing of any such financing statement or the resulting perfection of its ownership or Security Interests in such entity's assets. In addition, Purchaser shall have the right to notify such entity's Payors or Account Debtors of Purchaser's rights, including without limitation, Purchaser's right to collect all Accounts, and to notify any Payor/Account Debtor, or other creditor of such entity that Purchaser has rights in such entity's assets.

23. **Conflict**. Unless otherwise expressly stated in any other Related Agreement between the Parties, if a conflict exists between the provisions of this Agreement and the provisions of such other Related Agreement, the provisions of this Agreement shall control.

24. **Severability**.   In the event any one or more of the provisions contained in this Agreement is held to be invalid, illegal or unenforceable in any respect, then such provision shall be ineffective only to the extent of such prohibition or invalidity, and the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

25. **Enforcement**.   This Agreement and all Related Agreements hereof is the product of negotiation and preparation by and among the Parties and its respective attorneys, and shall be construed accordingly.

26. **Relationship of Parties**.   The relationship of the Parties hereto shall be that of Seller and Purchaser of Accounts, and Purchaser shall not be a fiduciary of the Seller, although Seller may be a fiduciary of the Purchaser.

27. **Attorneys' Fees**. Seller agrees to reimburse Purchaser on demand for:
27.1.  The actual amount of all costs and expenses, including reasonable attorneys' fees, which Purchaser has incurred or may incur in:
27.1.1. Negotiating, preparing, or administering this Agreement and any documents prepared in connection herewith;
27.1.2. Protecting, preserving or enforcing any lien, security or other rights granted by Seller to Purchaser or arising under applicable law, whether or not suit is brought, including but not limited to the defense of any Avoidance Claims or the defense of Purchaser's lien priority;
27.2.  The actual or billed costs but not limited to photocopying (a minimum of $.10/page), travel, and reasonable attorneys' fees and expenses incurred in complying with any subpoena or other legal process in any way relating to Seller. This provision shall survive termination of this Agreement.
27.3. The actual amount of all costs and expenses, including reasonable attorneys' fees, which Purchaser may incur in enforcing this Agreement and any documents prepared in connection herewith, or in connection with any federal or state insolvency proceeding commenced by or against Seller, including those (i) arising out the automatic stay, (ii) seeking dismissal or conversion of the bankruptcy proceeding or (ii) opposing confirmation of Seller's plan there under.

28. **Entire Agreement**.   No promises of any kind have been made by Purchaser or any third party to induce Seller to execute this Agreement.  No course of dealing, course of performance or trade usage, and no parole evidence of any nature, shall be used to supplement or modify any terms of this Agreement.

29. **Choice of Law**.   This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the Chosen State.

30. **Jury Trial Waiver**. THE PARTIES HERETO WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING HEREUNDER, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. ANY PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

8

Seller's Initials

31. **Venue; Jurisdiction**. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Purchaser so elects, be instituted in any court sitting in the Chosen State, in the city in which Purchaser's chief executive office is located, or if none, any court sitting in the Chosen State (the "Acceptable Forums"). Seller agrees that the Acceptable Forums are convenient to it and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Seller waives any right to oppose any motion or application made by Purchaser to transfer such proceeding to an Acceptable Forum.

32. **Service of Process**. Seller agrees that Purchaser may effect service of process upon Seller by regular mail at the address set forth herein or at such other address as may be reflected in the records of Purchaser, or at the option of Purchaser by service upon Seller's agent for the service of process.

33. **Assignment**. Purchaser may assign its rights and delegate its duties hereunder. Upon such assignment, Seller shall be deemed to have attorned to such assignee and shall owe the same obligations to such assignee and shall accept performance hereunder by such assignee as if such assignee were Purchaser.

34. **Counterparts**. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart of the signature page to this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement, and any party delivering such an executed counterpart of the signature page to this Agreement by facsimile to any other party shall thereafter also promptly deliver a manually executed counterpart of this Agreement to such other party, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

35. **Notice**.
    35.1. All notices required to be given to any party other than Purchaser shall be deemed given upon the first to occur of (i)deposit thereof in a receptacle under the control of the United States Postal Service, (ii) transmittal by electronic means t o a receiver under the control of such party, or (iii) actual receipt by such party or an employee or agent of such party. All notices to Purchaser shall be deemed given upon actual receipt by a responsible officer of Purchaser.

    35.2. For the purposes hereof, notices hereunder shall be sent to the following addresses, or to such other addresses as each such party may in writing hereafter indicate:

**SELLER**: DIS EXPRESS, INC
Address:   2237 TRADITION DR NE
           GRAND RAPIDS, MI 49505
Officer:   MLADEN TEPIC
Fax Number:

**PURCHASER**: Compass Funding Solutions, LLC
Address: 115 55th St, Suite 301
          Clarendon Hills, IL 60514
Officer: Vlad Kostik
Fax Number:  (888) 908-8002

IN WITNESS WHEREOF, the Parties have executed this Agreement on the day and year first above written.

**SELLER**: DIS EXPRESS, INC

By: _____

Name: MLADEN TEPIC
Title:   PRESIDENT

**PURCHASER**: Compass Funding Solutions, LLC

By: _____

Name: Vlad Kostik
Title: (Senior Vice) President

Sworn and subscribed before me this
29 day of March , 20 19

_____
NOTARY PUBLIC

Sworn and subscribed before me this
_____ day of _____, 20____

_____
NOTARY PUBLIC

[ SEAL ]

SADO JELOVAC
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF KENT
My Commission Expires 1/29/2020

[ SEAL ]

9

Seller's Initials _____





115 W 55th Street, Clarendon Hills, IL 60514  Tel: 844-899-8092  Fax: 888-908-8002 www.compassfs.net

### 5. CONTINUING GUARANTY AGREEMENT

To induce Compass Funding Solutions, LLC, a Illinois Corporation and any other Co-Buyer specified in the Factoring Agreement described below ("Buyer") to enter into and provide credit facilities to **DIS EXPRESS, INC** ( Seller") under that certain Factoring Agreement between Buyer and Seller dated the same date as this guaranty in such sums and upon such terms as Buyer deems best, the undersigned **MLADEN TEPIC**  ("Guarantor"), irrevocably guarantees, as an independent obligation of Guarantor, prompt performance and payment by Seller, when due, or at any time thereafter, with interest at the agreed upon rate, all of Seller's obligations heretofore or hereafter owed to or held by Buyer if not performed or paid promptly by Seller when due.

This guaranty is an absolute, unconditional, present and continuing guarantee of payment and not of collectability and is in no manner conditional or contingent upon any attempt to collect from Seller or any other person, or upon any other condition or contingency. Guarantor understands that if Seller fails to perform or pay promptly any of its obligations to Buyer, or files petition for bankruptcy, reorganization or insolvency, or makes an assignment for the benefit of creditors, Buyer may accelerate the performance of Seller's obligations.

If Buyer is required, at any time, to repay any amount received in payment of Seller's obligations because such payment was a preferential transfer or a fraudulent conveyance, or for any reason, then, Guarantor shall be and remain liable to Buyer under this guaranty for the amount so repaid as if is such amount had never originally been received by Buyer, and the provisions of this sentence shall survive, and continue in effect, notwithstanding any revocation or release of this guaranty.

Guarantor is aware of Seller's financial condition and is delivering this Guaranty at Seller's request and based solely upon Guarantor's own investigation.  Guarantor is not relying on any representation of Buyer.  Guarantor accepts the risks of a continuing guaranty, which include the possibility that Seller will incur additional obligations for which Guarantor will be liable after Seller is no longer able to pay, or after bankruptcy or insolvency proceedings have been commenced.

Guarantor represents and warrants that it is in Guarantor's direct interest to assist Seller in procuring credit, because Seller is an affiliate or Guarantor, furnishes goods or services to Guarantor, purchases or acquires goods or services from Guarantor, or otherwise has a direct or indirect corporate business relationship with Guarantor.

Guarantor waives: (i) notice of the  acceptance by Buyer  of this guaranty; (ii) notice of all transactions with Seller; (iii) notice of the conversion of any indebtedness to promissory notes and any requirements for presentment, protest and notice of protest and non-payment; (iv) any right of offset; (v) any defense based on bankruptcy, disability or any other defense of Seller or any other person; (vi) any defense based on Buyer's failure  to obtain, perfect or maintain a security interest; (vii) all rights of subrogation, reimbursement, indemnification or contribution and any other rights or defenses of an indemnitor or guarantor;  (viii) all rights and defenses based on Buyer's election of remedies.

Guarantor hereby waives Guarantor's right to a jury trial of any claim or clause of action based upon or arising out of this guaranty or any dealings relating to the subject matter of it.  Guarantor acknowledges that this waiver is a material inducement to Buyer to provide credit facilities under the Factoring Agreement and to accept this guaranty, that Buyer has already relied on this waiver in providing Seller with credit facilities and accepting this guaranty, and that Buyer will continue to rely on this waiver in future dealings under the Factoring Agreement.  Guarantor further warrants and represents that Guarantor has knowingly and voluntarily waived Guarantor's jury trial right following consultation with legal counsel.

Initial  MT



115 W 55th Street, Clarendon Hills, IL 60514  Tel: 844-899-8092  Fax: 888-908-8002 www.compassfs.net

All rights of Guarantor under any current or future obligation owed by Seller are subordinated to the prior payment, in full, of all of Seller's obligations to Buyer.  No payment of any such subordinated obligation shall be made to or accepted by Guarantor if at the time of such payment any of Seller's obligations to Buyer are outstanding, and any such payments that are received shall be held by Guarantor as trustee for Buyer.

Guarantor will pay all costs and expenses, including reasonable attorney's fees, incurred by Buyer in enforcing the obligations of Seller and Guarantor.  All sums due under this guaranty shall bear interest at the highest rate charged with respect to Seller's obligations to Buyer.

If Buyer assigns Seller's underlying debt or any portion of it, Buyer may assign the rights granted under this guaranty as those rights apply to the assigned debt.  Each provision of this guaranty shall be severable from every other provision for the purpose of determining the legal enforceability of this guaranty.  This guaranty may only be amended in writing, and shall be governed and construed in accordance with the laws of the State of Illinois.  Any suit, action or proceeding arising out of this guaranty, or the interpretation, performance or breach of this guaranty, shall be instituted in any court of Du Page County, State of Illinois ("Acceptable Forums"). Guarantor agrees that the Acceptable Forums are convenient to Guarantor, and irrevocably submits to the jurisdiction of the Acceptable Forums; irrevocably agreeing to be bound by any judgment rendered thereby in connection herewith, and waives any and all objections to the jurisdiction or venue that it may have any such suit, action or proceeding.

By _Mladen Tepic_

Date: _3/29/19_

**MLADEN TEPIC**
**2237 TRADITION DR NE**
**GRAND RAPIDS, MI 49505**
 SSN: 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


Notarization:

State of: _Michigan_

County of: _Kent_

Personally appeared before me and proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged to me that said person executed the same in their authorized capacity.

Notary Public: _Sado Jelovac_

My Commission Expires On: _01/29/2020_

SADO JELOVAC
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF KENT
My Commission Expires 1/29/2020



**115 W 55th Street, Clarendon Hills, IL 60514 Tel: 844-899-8092  Fax: 888-908-8002 www.compassfs.net**

## CERTIFICATION OF INCUMBENCY

The undersigned, the duly elected and acting Secretary of **DIS EXPRESS, INC** a MI corporation ("Company"), does hereby certify that set forth below are the names and titles of the officers of the Company and that set forth above each name is the true and correct signature of each officer.

President

Vice President

Secretary

Treasurer

IN WITNESS WHEREOF, I have hereunto set my hand and seal of the Corporation this 29 day of March, 2019.

(SEAL)

Sado Jelovac
Notary Public

SADO JELOVAC
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF KENT
My Commission Expires 1/29/2020

Secretary

# COMPASS
## FUNDING SOLUTIONS

115 W 55th Street, Clarendon Hills, IL 60514    Tel: 844-899-8092 Fax: 888-908-8002  www.compassfs.net

### CERTIFIED COPY OF RESOLUTIONS

**BE IT RESOLVED**, that the Factoring and Security Agreement (the "Agreement") dated 03/27/2019 between Seller and Compass Funding Solutions LLC (herein "Buyer") and all other agreements and documents connected therewith be, and the same hereby are, approved on the terms and conditions as set forth therein;

**BE IT FURTHER RESOLVED**, that any owner/member or officer/manager of Seller is authorized and directed to enter into said Agreement and all other agreements and documents connected therewith and to execute the same for and on behalf of Seller on the terms and conditions set forth therein;

**FURTHER RESOLVED**, that any owner/member or officer/manager of Seller is authorized and directed to negotiate, agree upon, execute and deliver, from time to time, in the name of, and on behalf of, Seller, such agreements, amendments and supplements to said Agreement or any other agreement or document connected therewith, documents, instruments, certificates, notices, and further assurances, and to perform any and all such acts and things as may be required by Buyer in connection with said Agreement or any other agreement or document connected therewith, or may to Buyer seem necessary or proper to implement and in effect complete consummation of Agreement or any other agreement or document connected therewith in all respects and the purposes set forth in these resolutions;

**FURTHER RESOLVED**, that a Schedule of Accounts submitted and signed by any employee/agent of Seller will authorize the sale, transfer or assignment of, for full face value or at a discount there from, accounts, notes, trade acceptances, drafts, contracts, leases or other instruments owned or held by Seller and guarantee payment thereof on Seller's behalf.

**FURTHER RESOLVED**, that these resolutions shall remain in full force and effect until written notice of their amendment or repeal shall be received by Buyer and until all indebtedness and obligations arising out of said Agreement and all other agreements and documents connected therewith shall have been paid and satisfied in full.

The undersigned, a duly authorized owner/member, or officer/manager of Seller does hereby certify that the foregoing is a true and correct copy of the resolutions duly adopted at a meeting of the Directors/Owners or Members/Managers of Seller, duly called, noticed and held on the date specified below, at which meeting there was at all times present and acting quorum of the same; that said resolutions are in full force and effect; and that the following is a true and correct list of the present officers/managers of Seller:

**CORPORATION (sign if Seller is a corporation)**      OR     **LLC (sign if Seller is a limited liability company)**

President's Name: _____     Manager's Name: _Mladen Tepic_

President's Signature: _____     Manager's Signature: _Mladen Tepic_

Sec./Treas.'s Name: _____     Member's Name: _Osman Adanalic_

Sec./Treas.'s Signature: _____     Member's Signature: _(signature)_

**CORPORATION & LLCs (must be signed if corporation or LLC)**

Owner/Member's Name: _____     Owner/Member's Name: _Mladen Tepic_

Owner/Member's Signature: _____     Owner/Member's Signature: _Mladen Tepic_

Seller's Name: **DIS EXPRESS, INC**          **Approved/Adopted by the Board**: 03/27/2019

Revised 7.2016



# COMPASS
## FUNDING SOLUTIONS

115 W 55th St, Suite 301, Clarendon Hills, IL 60514 ▌ Ph: (844) 899-8092 ▌ Fax: (888) 908-8002  www.compassfs.net

## NOTIFICATION OF ASSIGNMENT

Date: 3/27/2019

Sir/Ma'am:

The purpose of this letter is to inform you that        DIS EXPRESS, INC        ("Assignor") has assigned its accounts and contracts receivable to Compass Funding Solutions, LLC ("CFS"). Pursuant to the assignment of its accounts and contracts receivable to Compass, we hereby notify you to begin remitting payment on all of Assignor's accounts, now or hereafter existing, exclusively in accordance with the remittance instructions below.  This notice shall also unconditionally authorize you to disclose to Compass all information relating to Assignor's accounts.

These instructions shall become effective immediately upon your receipt of this letter and are irrevocable.  These payment instructions and the provisions of this letter shall continue in force until your receipt of written notification of termination.  Such notification must be signed by CFS and notarized.  **PAYMENT TO ANYONE OTHER THAN CFS WILL NOT CONSTITUTE PAYMENT OF YOUR INDEBTEDNESS ON THE ACCOUNTS**.  If you have any questions concerning our billings or the remittance of your payments, please contact us at **(844) 899-8092**

The assignment Assignor's account to CFS has been duly recorded under the applicable Uniform Commercial Code provisions and this notification fulfills all notification requirements therein.

The remittance instructions contained herein shall supersede any other remittance instructions you may have previously received, including any other remittance address contained on Assignor's invoices or on your purchase orders.

**REMIT PAYMENTS TO:**
**COMPASS FUNDING SOLUTIONS LLC**
**DIS EXPRESS, INC MC#883811**
**P.O.Box 205154**
**Dallas, TX 75320-5154**

If remitting electronically, funds must be sent via wire transfer or ACH using the following instructions:

| | |
|---|---|
| Account Name: | **COMPASS FUNDING SOLUTIONS LLC** |
| Bank Name: | **Wells Fargo Bank** |
| Account Number: | **4122486202** |
| Routing Number: | **121000248** |

If you wish to claim any adjustments, holdbacks, offsets, reductions, or qualifications with regard to existing accounts or if you claim any such adjustments, holdbacks, offsets, reductions, or qualifications in the future, please notify us immediately in writing of your claim including the specific circumstances relating thereto and/or any supporting documentation you may have.

Sincerely,

Company: DIS EXPRESS, INC

Address:  2237 TRADITION DR NE

City, State, Zip: GRAND RAPIDS, MI 49505

Telephone No.: 616-855-1080

By: *Mladen Tepic* (Signature)

MLADEN TEPIC (Printed)

**COMPASS FUNDING SOLUTIONS LLC**

By:_____(Signature)

JOSE REBOLLAR (Printed)

**ACKNOWLEDGED AND ACCEPTED:**

(Company Name) DIS Express Inc.

(Signature) *Mladen Tepic*

(Title) Owner | President     (Date) 3/29/19

Please fax back to (888) 908-8002 or email to noa@compassfs.net



## BANK WIRE LETTER

TO:  DIS EXPRESS, INC

MLADEN TEPIC

FROM: Compass Funding Solutions, LLC

DATE:  3/27/2019

RE:     Wiring Instructions

Please let this letter serve as our notification to you that Compass Funding Solutions, LLC cannot, under any circumstances, wire funds into a bank account being used by you primarily as a payroll account.

By signing below you are acknowledging that the banking account that you have designated for Compass Funding Solutions, LLC to wire funds into is not primarily a payroll account.

PNC Bank                           4272663383
Name of Bank                              Account #

Grand Rapids    Michigan              041000124
Bank Location         City / State              ABA #

DIS Express Inc               3/29/19
Company Name                         Date

Mladen Tepic                  President
Authorized Signature                  Title

We appreciate your cooperation in this matter.

[NAME]  Tatianna Gutu
Operations Manager



Credit Debit Authorization

I, MLADEN TEPIC , PRESIDENT (title)
a duly authorized signer for DIS EXPRESS, INC (Company), authorize
Compass Funding Solutions, LLC. and my financial institution, to initiate debit entries for
corporate trade payments from the demand deposit account and the financial institution
named below. I acknowledge that the origination of ACH transactions to/from a corporate
account must comply with the provisions of U.S. law. In addition, I authorize Compass Funding
Solutions , LLC to initiate electronic credit entries and adjustments for any debit entries made in
error to my account as indicated above.

PNC Bank
(Financial Institution Name)

3415 Lake Eastbrook Blvd SE   Grand Rapids, MI   49546
(Address)                    (City/State)                          (Zip)

041000124                           42726633383
(Routing Number- Sig. Panel Code)          (Account Number/ Exp. Date)

Type of Acct: ☒ Checking ☐ Savings

This authority is to remain in full force and effect until Compass Funding Solutions , LLC has
received written  notification from an authorized representative
of  DIS Express (Company) of its termination in such time
and manner as to afford COMP ANY and FINANCIAL  INSTITUTION a reasonable opportunity to
act on it.

_Mladen Tepic_                           Mladen Tepic
Authorized Company Representative              Printed name

President
Title

3/29/19
Date

**PLEASE ATTACH VOIDED CHECK TO THIS FORM!**

Set up ID# _____
*Carrier ID# _____
**\* Please Note: These fields must be completed prior to remitting to C. H. Robinson. Documents with incomplete information will be discarded.**

| V-Code ID# _____ |
| Carrier ID# _____ |
| For Internal Use Only |

**ACCOUNTS RECEIVABLE AUTHORIZATION**

C.H. Robinson Worldwide, Inc., including its subsidiaries and affiliated companies ('CHR'), provides electronic access through CHR's proprietary systems to the accounts receivable and load information pertaining to shipments transported by the carrier named below ('Carrier'). Carrier hereby authorizes and requests that CHR permit Carrier's factoring company or lender,

**COMPASS FUNDING SOLUTIONS LLC**

Carrier's factoring company or lender

**Ivan Petkovski/ipetkovski@compassfs.net**

Factoring Agent's Name

**844-899-8092 x 8455/ direct: 214-396-5943**

Factoring Company Phone Number

to have electronic access to Carrier's accounts receivable information. This Authorization shall remain in effect until Carrier notifies CHR in writing that it revokes this Authorization. Carrier hereby indemnifies and holds harmless CHR against any claims arising out of the grant of this Authorization or the transmission of information by CHR. The undersigned is an owner or officer of Carrier and is authorized by Carrier to sign this Authorization on Carrier's behalf.

**\* DIS EXPRESS, INC**

CARRIER

_____
DBA - If Applicable

**\*By:**
MLADEN TEPIC

Its: _Presidevt_

Date: _____
\* Indicates Required Fields

**\* 883811**
MC#

**Fax to: 952-683-3701**

**or mail to**

**Attention: Carrier Services**
**Suite 100**
**14800 Charlson Road**
**Eden Prairie, MN 55347**

Form **8821**

(Rev. January 2018)

Department of the Treasury
Internal Revenue Service

## Tax Information Authorization

▶ Go to *www.irs.gov/Form8821* for instructions and the latest information.

▶ Don't sign this form unless all applicable lines have been completed.
▶ Don't use Form 8821 to request copies of your tax returns
or to authorize someone to represent you.

| OMB No. 1545-1165 |
|---|
| **For IRS Use Only** |
| Received by: |
| Name _____ |
| Telephone _____ |
| Function _____ |
| Date _____ |

**1  Taxpayer information.** Taxpayer must sign and date this form on line 7.

| Taxpayer name and address | Taxpayer identification number(s) |
|---|---|
| DIS EXPRESS, INC<br>2237 TRADITION DR NE<br>GRAND RAPID, MI 49505 | 47-1504228 |
| | Daytime telephone number    Plan number (if applicable) |
| | 616-855-1080 |

**2  Appointee.** If you wish to name more than one appointee, attach a list to this form. **Check here if a list of additional appointees is attached ▶** ☐

| Name and address | |
|---|---|
| | CAF No.    0309-61014R |
| | PTIN    |
| Compass Funding Solutions, LLC<br>115 W 55th Street, Suite 301<br>Clarendon Hills, IL  60514 | Telephone No.    844-899-8092 |
| | Fax No.    888-908-8002 |
| | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

**3  Tax Information.** Appointee is authorized to inspect and/or receive confidential tax information for the type of tax, forms, periods, and specific matters you list below. See the line 3 instructions.

     ☐  By checking here, I authorize access to my IRS records via an Intermediate Service Provider.

| (a)<br>Type of Tax Information (Income, Employment, Payroll, Excise, Estate, Gift, Civil Penalty, Sec. 4980H Payments, etc.) | (b)<br>Tax Form Number<br>(1040, 941, 720, etc.) | (c)<br>Year(s) or Period(s) | (d)<br>Specific Tax Matters |
|---|---|---|---|
| INCOME | 940, 1064, 8832, 1120, 1120A | 2016-2022 | LIEN INFORMATION |
| EMPLOYMENT EXERCISE | 941.720 | 2016-2022 | LIEN INFORMATION |
| | | | |

**4  Specific use not recorded on Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, check this box. See the instructions. If you check this box, skip lines 5 and 6 . . . . . . . ▶ ☐

**5  Disclosure of tax information** (you **must** check a box on line 5a or 5b unless the box on line 4 is checked):

  **a** If you want copies of tax information, notices, and other written communications sent to the appointee on an ongoing basis, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☑

    **Note.** Appointees will no longer receive forms, publications, and other related materials with the notices.

  **b** If you don't want any copies of notices or communications sent to your appointee, check this box . . . . . ▶ ☐

**6  Retention/revocation of prior tax information authorizations.** If the line 4 box is checked, skip this line. If the line 4 box isn't checked, the IRS will automatically revoke all prior Tax Information Authorizations on file unless you check the line 6 box and attach a copy of the Tax Information Authorization(s) that you want to retain. . . . . . . . . . . . . ▶ ☑

     To revoke a prior tax information authorization(s) without submitting a new authorization, see the line 6 instructions.

**7  Signature of taxpayer.** If signed by a corporate officer, partner, guardian, partnership representative, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute this form with respect to the tax matters and tax periods shown on line 3 above.

  ▶ **IF NOT COMPLETE, SIGNED, AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.**

  ▶ **DON'T SIGN THIS FORM IF IT IS BLANK OR INCOMPLETE.**

| _Mladen Tepic_ (signature) | 3/29/19 |
|---|---|
| Signature | Date |
| Mladen Tepic | President |
| Print Name | Title (if applicable) |

For Privacy Act and Paperwork Reduction Act Notice, see instructions.      Cat. No. 11596P      Form **8821** (Rev. 1-2018)

Form **8821**

(Rev. January 2018)

Department of the Treasury
Internal Revenue Service

# Tax Information Authorization

▶ Go to *www.irs.gov/Form8821* for instructions and the latest information.
▶ Don't sign this form unless all applicable lines have been completed.
▶ Don't use Form 8821 to request copies of your tax returns
or to authorize someone to represent you.

OMB No. 1545-1165

**For IRS Use Only**

Received by:
Name _____
Telephone _____
Function _____
Date _____

---

**1  Taxpayer information.** Taxpayer must sign and date this form on line 7.

| Taxpayer name and address | Taxpayer identification number(s) |
|---|---|
| MLADEN TEPIC<br>2237 TRADITION DR NE<br>GRAND RAPID, MI 49505 | 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 |

| | Daytime telephone number | Plan number (if applicable) |
|---|---|---|
| | 616-855-1080 | |

**2  Appointee.** If you wish to name more than one appointee, attach a list to this form. **Check here if a list of additional appointees is attached** ▶ ☐

| Name and address | |
|---|---|
| Compass Funding Solutions, LLC<br>115 W 55th Street, Suite 301<br>Clarendon Hills, IL 60514 | CAF No. _____ 0309-61014R<br>PTIN _____<br>Telephone No. _____ 844-899-8092<br>Fax No. _____ 888-908-8002<br>Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

**3  Tax Information.** Appointee is authorized to inspect and/or receive confidential tax information for the type of tax, forms, periods, and specific matters you list below. See the line 3 instructions.

☐ By checking here, I authorize access to my IRS records via an Intermediate Service Provider.

| (a)<br>Type of Tax Information (Income, Employment, Payroll, Excise, Estate, Gift, Civil Penalty, Sec. 4980H Payments, etc.) | (b)<br>Tax Form Number (1040, 941, 720, etc.) | (c)<br>Year(s) or Period(s) | (d)<br>Specific Tax Matters |
|---|---|---|---|
| INCOME | 1040 | 2016-2022 | LIEN INFORMATION |
| | | | |
| | | | |

**4  Specific use not recorded on Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, check this box. See the instructions. If you check this box, skip lines 5 and 6 . . . . . . . ▶ ☐

**5  Disclosure of tax information** (you **must** check a box on line 5a or 5b unless the box on line 4 is checked):

**a** If you want copies of tax information, notices, and other written communications sent to the appointee on an ongoing basis, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☑

**Note.** Appointees will no longer receive forms, publications, and other related materials with the notices.

**b** If you don't want any copies of notices or communications sent to your appointee, check this box . . . ▶ ☐

**6  Retention/revocation of prior tax information authorizations.** If the line 4 box is checked, skip this line. If the line 4 box isn't checked, the IRS will automatically revoke all prior Tax Information Authorizations on file unless you check the line 6 box and attach a copy of the Tax Information Authorization(s) that you want to retain. . . . . . . . . . . ▶ ☑

To revoke a prior tax information authorization(s) without submitting a new authorization, see the line 6 instructions.

**7  Signature of taxpayer.** If signed by a corporate officer, partner, guardian, partnership representative, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute this form with respect to the tax matters and tax periods shown on line 3 above.

▶ **IF NOT COMPLETE, SIGNED, AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.**

▶ **DON'T SIGN THIS FORM IF IT IS BLANK OR INCOMPLETE.**

| *Mladen Tepic* (signature) | 13/29/19 |
|---|---|
| Signature | Date |
| Mladen Tepic | President |
| Print Name | Title (if applicable) |

For Privacy Act and Paperwork Reduction Act Notice, see instructions.     Cat. No. 11596P     Form **8821** (Rev. 1-2018)